# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFREY SCUDDER | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-807 (BAH) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY, | * | |
| | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE DEFENDANT'S FEE WAIVER DENIAL AND ELECTRONIC RECORDS PRODUCTION COSTS[1]

Pursuant to Federal Rules of Civil Procedure 56, plaintiff Jeffrey Scudder hereby moves the Court for partial summary judgment on the matter of the defendant Central Intelligence Agency's declination to provide him a fee waiver and its attempt to assess reproduction fees on any electronic records that will be produced.

A Memorandum of Points and Authorities, Statement of Material Facts About Which There is No Genuine Issue and a proposed Order accompanies this Motion.

---

[1] This Motion and its accompanying filings were submitted for prepublication review to CIA pursuant to the terms of the undersigned's secrecy/non-disclosure agreement. Each document was drafted with the intent to be completely free of classified information. Nevertheless, should any information be redacted by the CIA as classified the full version should be reviewed by this Court, including requiring the CIA to substantively defend the classification determinations.

Date: September 4, 2013

Respectfully submitted,

/s/

_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@markzaid.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                        |     |                           |
|------------------------|-----|---------------------------|
|                        | *   |                           |
| JEFFREY SCUDDER        | *   |                           |
|                        | *   |                           |
| Plaintiff,             | *   |                           |
|                        | *   |                           |
| v.                     | *   | Civil Action No. 12-807 (BAH) |
|                        | *   |                           |
| CENTRAL INTELLIGENCE   | *   |                           |
| AGENCY                 | *   |                           |
|                        | *   |                           |
| Defendant.             | *   |                           |
|                        | *   |                           |

*    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**REGARDING THE DEFENDANT'S FEE WAIVER DENIAL**
**AND ELECTRONIC RECORD PRODUCTION COSTS**[1]

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et

seq., filed by plaintiff Jeffrey Scudder ("Scudder"), an employee of defendant Central

Intelligence Agency ("CIA"), for copies of nearly two thousand Studies in Intelligence

("SII") articles, This is one of two procedural issues that require resolution prior to any

substantive challenge to any withholdings that may be ultimately exerted by CIA.[2]

Specifically, the dispute at issue in this Motion is whether Scudder has demonstrated that

---

[1] This memorandum was submitted for prepublication review to CIA pursuant to the terms of the undersigned's secrecy/non-disclosure agreement. It was drafted with the intent to be completely free of classified information. Nevertheless, should any information be redacted by the CIA as classified the full version should be reviewed by this Court, including requiring the CIA to substantively defend the classification determinations.

[2] The other matter, which is subject to separate Cross-Motions for Summary Judgment that are nearly fully briefed, pertains to whether CIA must produce any responsive records in electronic format. A favorable ruling for Scudder in that dispute may moot this one.

he qualifies for a fee waiver for any or all fees that would be incurred as a result of CIA's duplication of responsive records.

Based on the arguments herein, Scudder is entitled to the reversal of CIA's administrative denial of his requested fee waiver. There is no genuine issue of material fact that disputes Scudder's ability to satisfy the criteria for a full fee waiver or, at a minimum, at least a reduction in fees. Thus, partial summary judgment should be entered in favor of Scudder.

## FACTUAL BACKGROUND

In December 2010, Scudder submitted three separate FOIA requests seeking electronic copies of approximately 2,000 Studies in Intelligence ("SII") articles. The requests were specifically for:

(a) Electronic copies of 133 Studies in Intelligence articles listed in the accompanying pages.

(b) Electronic copies of 282 Studies in Intelligence articles listed in the accompanying pages.

(c) Electronic copies of 1,572 Studies in Intelligence articles listed in the accompanying pages.

Dkt No. 9-2 (filed June 11, 2013). The CIA eventually acknowledged receipt of the requests by letter dated July 27, 2011, and assigned the three requests Nos. F-2011-00448, F-2011-00449, F-2011-00450. Id.

In accordance with the Court's Minute Order issued April 11, 2013, Scudder submitted to CIA a detailed submission demonstrating that he was entitled to a fee waiver

for any reproduction costs incurred in the processing of his three FOIA requests.[3] See Exhibit "1" (Scudder's Fee Waiver Request).

Scudder noted that he has no commercial interest in the records at issue. He explained that the primary purpose of securing the records is to disseminate – in coordination with The James Madison Project and George Mason University's Center for History – copies of the SII articles to non-profit organizations and members of the media. He argued that the information derived from the SII articles would contribute significantly to the public's understanding of government operations and activities, as it would provide insight into the analytical methods used by CIA experts. He also noted that the SII articles contain great historical value, as evidenced by CIA's own decision to publish a select number of them on its website. Id.

By letter dated May 24, 2013, CIA, however, denied Scudder's request for a fee waiver and indicated that payment in full of the amount estimated for completion of processing for the three requests - $1,880.00 – would need to be paid prior to CIA taking any further action on any of the requests. Exhibit "2" (CIA Denial of Fee Waiver Request"). The CIA argued that the SII articles are individual works of its authors rather than official CIA documentation, and therefore the articles would therefore add little to the public's understanding of governmental operations or activities. Additionally, CIA claimed that Scudder failed to sufficiently demonstrate how the information would be disseminated to the public beyond posting it online. Lastly, the CIA noted that approximately 1,627 of the SII articles are currently accessible online through the CIA's

---

[3] Alternatively, in an act of good faith, Scudder indicated his continued willingness to pay a reduced fee of $600 for paper copies. Exhibit "1". He is unwilling to pay for duplication costs should electronic records be produced. See infra Section III.

website and that duplicative dissemination of those articles would not satisfy the criteria for a fee waiver. Id.

Per the Court's Minute Order dated April 11, 2013, a briefing schedule (since modified) was established to bring this challenge before the Court following the above referenced exchange of information between the parties.

## ARGUMENT

## I.  STANDARD OF REVIEW

"The basic purpose of the FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The objective of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976).

Summary judgment should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accepting the non-moving party's evidence as true and drawing "all justifiable inferences" in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the Court need not rely on any "conclusory allegations unsupported by factual data," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)(internal quotation marks

and citations omitted), and should only find that "there is a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citation omitted).

The mere existence of some alleged factual dispute between the parties does not defeat summary judgment; the requirement is that there is no genuine issue of material fact. See Holcomb, 433 F.3d at 895 (internal quotation marks and citations omitted). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law. Factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. Anderson, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

FOIA cases are typically decided on motions for summary judgment. Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).

## II. SCUDDER IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT UNDERMINING HIS ENTITLEMENT TO A PARTIAL OR FULL FEE WAIVER WITH RESPECT TO DUPLICATION COSTS

Congress amended FOIA to ensure that it is liberally construed in favor of fee waivers for noncommercial requesters. See Judicial Watch, Inc. v. Rossotti, 326 F. 3d 1309, 1312 (D.C. Cir. 2003)(internal quotations omitted); see also Eudey v. CIA, 478 F. Supp. 1175, 1177 (D.D.C. 1979)(noting legislative history that Congress did not want fees to be used "as an obstacle to disclosure of requested information").

A requester seeking a fee waiver bears the initial burden of identifying the public interest to be served. Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C. Cir. 1987). In reviewing an agency's determination on a fee waiver issue, a district court must apply a *de novo* standard of review and look only to the administrative record that was before the agency at the time of its decision. In Def. of Animals v. NIH, 543 F. Supp. 2d 83, 108 (D.D.C. 2008), citing 5 U.S.C. § 552(a)(4)(A)(vii). This is not to say that courts should ignore otherwise admissible evidence of a public interest that was not submitted to the agency, however, since such evidence may apprise the court of a controversy already known to the agency. Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 648 (D.C. Cir. 1987).

The text of the FOIA statute sets forth rather clearly the necessary elements that justify a waiver – or, alternatively, a reduction – of fees incurred as part of a FOIA request:

> Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

See 5 U.S.C. § 552(a)(4)(A)(iii).

The D.C. Circuit has set forth four factors – and CIA's regulations effectively mirror those factors – for consideration when evaluating what constitutes a "public interest":

a) The request must concern the operations or activities of the government;

b) The disclosure must be "likely to contribute" to an understanding of government operations or activities;

c) Disclosure must contribute to an understanding of the subject by the public at large; and

    d)  Disclosure must be likely to contribute significantly to such public understanding.

See Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1126 (D.C. Cir. 2004);

32 C.F.R. §§ 1900.13(2)(i)-(iv)(applicable CIA regulations).

For the reasons set forth below, this Court should respectfully conclude that there is

no genuine issue of material fact in dispute and Scudder sufficiently demonstrated that

his requests warrant a fee waiver or, at a minimum, a reduction of the cost.[4]

**A.  The Request Itself Concerns, And Disclosure Would Be Likely To Contribute To An Understanding Of, The Operations And Activities Of The Government**

The SII is a 50-year old professional journal produced internally by CIA's own

Center for the Study of Intelligence ("CSI"). Indeed, on its own webpage, CSI describes

the critical importance attributed by CIA to SII articles in general.

> Intelligence trailblazer Sherman Kent—the 'father' of intelligence analysis in America—created [SII] in 1955 as a journal for intelligence professionals. In the first article published in [SII], Kent called for the creation of a literature that would support the development of intelligence as a professional discipline. He said, "As long as this discipline lacks a literature, its method, its vocabulary, its body of doctrine, and even its fundamental theory run the risk of never reaching full maturity." *Kent believed that the most important service such a literature could perform would be to record and disseminate new ideas and experiences, and build toward a cumulative understanding of the profession.*

*https://www.cia.gov/library/center-for-the-study-of-intelligence/kent-csi/index.html* (last

accessed September 2, 2013)(emphasis added); Exhibit "1".

---

[4] As a preliminary matter, neither the requester category that Scudder might fall in nor the assessment of search fees is at issue. Scudder was assigned to the "All Other" category and CIA has noted no search fees will be assessed "because we estimate that the search will exceed the two free hours". Exhibit "3" (CIA letter dated April 12, 2013). In any event, "there is no need to determine a requester's fee category whenever the only assessable fee is a duplication fee", as is the case here. See 5 U.S.C. § 552(a)(4)(A)(ii); Uniform Freedom of Information Act Fee Schedule and Guidelines, 52 Fed. Reg. 10,012, 10,017 (March 27, 1987)("OMB Fee Guidelines").

But now CIA seeks to raise doubts about the extent to which SII articles, which it holds as so important that they are one of the few types of documents actually published on its website, can satisfy the first two prongs of the fee waiver analysis. Its basis for argument is solely that the articles lack institutional value. Instead, the articles merely reflect the "personal views, opinions and analysis of the individual authors." See Exhibit "2".

The CIA does not – and indeed cannot – cite to a single published case, however, in which this distinction has been identified as relevant to an evaluation of whether the requested information would contribute to public understanding of operations and activities of the U.S. Government. Permitting such a novel and unprecedented method of evaluation would seem to run contrary to the premise that agencies cannot substitute their own judgment for that of an objectively reasonable judgment by the requester as to the value of the information. See Ettlinger v. FBI, 596 F. Supp. 867, 875 (D. Mass. 1984); see also Schrecker v. Dep't of Justice, 970 F. Supp. 49, 50 n.2 (D.D.C. 1997)("The courts have consistently overturned agency denials of fee waivers when requesters have made a legitimately, objectively supportable showing of using the requested information for scholarly research into political and historical events.").

The unequivocal facts are that SII articles are controlled, produced, distributed and funded by CIA. Individuals seeking to have their articles published in an SII journal are required to submit them for review and evaluation by the Editorial Board at the CSI, which retains sole authority to accept or reject the article based on whether it makes a contribution to the literature of intelligence. *https://www.cia.gov/library/center-for-the-study-of-intelligence/csi-publications/how-to-submit-articles* (last accessed September 1,

2013). Not surprisingly, in the last three SII articles currently published on CIA's website 20 of the 25 authors are former or current CIA officials. *https://www.cia.gov/library/ center-for-the-study-of-intelligence/csi-publications/csi-studies/studies/vol.-57-no.-1-a/index.html* (March 2013 edition)(last accessed September 1, 2013); *https://www.cia.gov/library/center-for-the-study-of-intelligence/csi-publications/csi-studies/studies/vol-56-no-4/vol-56-no-4.html* (December 2012 edition)(last accessed September 1, 2013); *https://www.cia.gov/library/center-for-the-study-of-intelligence/csi-publications/csi-studies/studies/vol.-56-no.-3/index.html* (September 2012 edition)(last accessed September 1, 2013).

The CIA's arguments notwithstanding, Scudder has more than satisfied the first two prongs of the analysis. He demonstrated with sufficient specificity and detail that the information in the requested SII articles both concern and would contribute to an understanding of government operations and activities.

### B.  Disclosure Of Responsive Records Would Contribute To An Understanding Of The Subject By The Public At Large

Assessment of the third prong – whether disclosure will educate a reasonably broad audience of persons – requires consideration of the requester's ability and intention to effectively disseminate the requested information to the public. See Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. 2d 54, 62 (D.D.C. 2002).

In its letter, CIA premised its fee waiver denial on the basis that insufficient evidence had been provided regarding Scudder's ability to disseminate the SII articles. It argued that JMP's ability to handle the task through its website appeared limited and that the mere intent to provide copies to George Mason's Center for History did not indicate active dissemination of the material. See Exhibit "2".

Proof of the ability to disseminate the released information to a broad cross-section of the public, however, is not required. See Carney v. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994).[5] Nor is the requester required to disclose a particularized plan for the analysis and publication of the information obtained. See Citizens for Responsibility & Ethics v. HHS, 481 F. Supp. 2d 99, 114-15 (D.D.C. 2006)

The ability to disseminate the information to the public may be shown in a variety of ways, including the requester's intent to give the information to an interested person or group that has the ability to publish it. The D.C. Circuit has previously sought to provide some clarity as to exactly how much detail is required in demonstrating that intent and ability:

> Judicial Watch's request contains considerably more detail regarding its ability to publicize disclosed information than did the defective request at issue in Larson v. C.I.A. In that case, we upheld a CIA fee waiver denial where, although the requester stated that he intended to distribute collected information to a newspaper, he "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or personal contacts with any major newspaper companies." Larson, 843 F.2d at 1483. By contrast, Judicial Watch has explained, in detailed and non-conclusory terms--*again, all that FOIA requires*--exactly how and to whom it will disseminate the information it receives.

---

[5] Nor does the fact that the public at large might not be interested in the information automatically preclude a fee waiver from being granted. Public understanding is enhanced when information is disclosed to the subset of the public most interested, concerned, or affected by a particular action or matter. See Cmty. Legal Servs., Inc. v. Housing Urban Dev., 405 F. Supp. 2d 553, 556 (E.D. Pa. 2005)(quoting U.S. Senator Patrick Leahy); see also Carney, 19 F.3d at 815 ("Such work by its nature usually will not reach a general audience but, by enlightening interested scholars, if often is of great benefit to the public at large."). In this Information Age, technology has made it possible for almost anyone to fulfill this requirement. D.C. Tech. Assistance Org. v. United States HUD, 85 F. Supp. 2d 45, 49 (D.D.C. 2000).

Judicial Watch, Inc., 326 F.3d at 1314 (emphasis added); see also id. (intended dissemination methods included incorporating information into newsletter, posting on organization's website, and referencing in media appearances).

The courts within this Circuit have reached similar conclusions in evaluating a requester's stated ability to disseminate requested information. See e.g., Judicial Watch, Inc., 185 F. Supp. 2d at 62 (plaintiff met its burden by describing intended dissemination methods, including allowing reporters to inspect documents and "blast faxing" press releases); Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 27 (D.D.C. 2006)(rejecting comparison to "tenuous link" that existed in Larson case, finding dissemination through website sufficient); Votehemp, Inc. v. DEA, 237 F. Supp. 2d 55, 62 (D.D.C. 2002)(requester satisfied burden by stating information would be disseminated through website, press releases and communications with lawmakers).

The same can be said for other courts as well. See e.g., Forest Guardians v. Dep't of Interior, 416 F.3d 1173, 1180 (10th Cir. 2005)(posting information on website and newsletter sufficient); Carney, 19 F.3d at 815 (inclusion of information by qualified scholar in college courses and in planned book sufficient); Cmty. Legal Servs., Inc., 405 F. Supp. 2d at 557-58 (criteria satisfied given organization's "enhanced" reputation and statute in local legal community, as well as multiple mechanisms for disseminating information, such as training courses and brochures); Pederson v. Resolution Trust Corp., 847 F. Supp. 851, 856-57 (D. Colo. 1994)(inclusion of information in newsletter published by Government Accountability Project sufficient).

Furthermore, the absence of a demonstrated history of past dissemination of information received through FOIA requests is not dispositive with respect to a requester's ability to sufficiently disseminate information.

> [T]he Court is not aware of a statutory requirement that a requesting party must have a history of disseminating information *derived from FOIA requests* to be entitled to a fee waiver. Indeed, if this were a requirement, a requesting party otherwise entitled to a fee waiver and capable of disseminating information to the public would have to pay fees associated with its initial FOIA requests until it had shown it was capable of disseminating information obtained through a FOIA request, a scenario that has no basis in FOIA or the legislative intent regarding the liberalization of fee waivers.

Citizens for Responsibility & Ethics, 481 F. Supp. 2d at 115 (emphasis in original).

Scudder notified CIA specifically of both his intent and ability to disseminate information derived from responsive records produced in response to his FOIA requests. He stated that he intends to disseminate the articles to interested researchers and members of the media for the purpose of promoting public awareness of the methodology by which intelligence analysis is conducted. This includes coordinating efforts with George Mason University's Center for History and The James Madison Project. Exhibit "1"; See also Declaration of Jeffrey Scudder at ¶¶5-7 (dated September 2, 2013)("Scudder Decl."), attached at Exhibit "4"; Declaration of Mark S. Zaid, Esq. at ¶5 (dated September 2, 2013), attached at Exhibit "5".

These assertions are more than sufficient, and numerous courts have so held, to demonstrate Scudder has satisfied the third prong of the analysis.

## C. Disclosure Of Responsive Records Would Significantly Contribute To Public Understanding Of Government Operations And Activities

The essence of the fourth prong can be condensed into the following question: will the public's understanding of the government's operations be *substantially greater* as a

result of the disclosure? <u>See</u> <u>Citizens for Responsibility & Ethics</u>, 481 F. Supp.2d at 116 (quotations omitted; emphasis in original). The CIA claims the answer to that question is "no" on the argument that most (if not all) of the requested information is already publicly available on the CIA's website. <u>See</u> Exhibit "2".

An agency asserting that the requested documents are already publicly available must do more than merely make that assertion. <u>See</u> <u>Citizens for Responsibility & Ethics v. HHS</u>, 481 F. Supp.2d at 111. Only material that has met a threshold level of public dissemination will not further "public understanding" within the meaning of the fee waiver provisions. <u>See</u> <u>Campbell v. Dep't of Justice</u>, 164 F.3d 20, 36 (D.C. Cir. 1998); <u>see also</u> <u>id</u>. ("[T]he FBI has not indicated how closely related the requested material was to material already in the public domain, an omission that precludes deference to its ultimate conclusions.") <u>Prison Legal News v. Lappin</u>, 436 F. Supp. 2d 17, 24 (D.D.C. 2006)("[S]imply because documents are available in an agency's reading room does not negate the fact that their production is likely to contribute to the understanding of government operations or activities."); <u>Fitzgibbon v. Agency for Int'l Development</u>, 724 F. Supp. 1048, 1050-51 (D.D.C. 1989)("The availability of FOIA material in an agency's public reading room does not thrust the material into the public domain."). Even when requested documents (or portions thereof) are already publicly available, the agency is required to demonstrate with specificity that the particular information sought by the requester is already in the public domain to the extent that disclosure would not provide new, meaningful information. <u>See</u> <u>Citizens for Responsibly & Ethics</u>, 481 F. Supp. 2d at 111-12.

Scudder's requests were purposely drafted to be broad in scope. Specifically, they are seeking release of the original, unredacted versions of each of the 1,987 SII articles for public dissemination. The requests were <u>not</u> meant to merely secure copies of the previously redacted versions of the SII articles that have already been posted online by CIA or through searchable databases at the National Archives and Records Administration. The requests were meant to compel a review of the appropriateness of the redactions and, in the case of the 360 unpublished articles, any withholdings in their entirety. Scudder Decl. at ¶¶8-12. Some of those articles had already been declassified but were never published in the CIA's Reading Room. <u>Id</u>. at ¶8. All of the articles referenced in the requests were recently scanned into quality searchable PDF files in order to make them more legible, although those new versions are not currently posted in the Reading Room either.  <u>Id</u>. at ¶16.

These facts undermine CIA's stated position on the matter. The CIA posited that the majority of the requested information was already accessible by the public, pointing to the fact that 1,627 of the requested articles are posted online. Exhibit "2". However, those articles have been posted *with redactions* and do not constitute the original versions of the articles themselves.[6]

 This distinction is more than one of mere semantics. The CIA has not demonstrated – and cannot demonstrate – that further disclosure of new information within unredacted copies of the SII articles (to say nothing of the 360 yet-unpublished articles) would not provide significant value to the public. The CIA's passing reference to the potentially exempt nature of the 360 non-published SII articles is little more than a red herring. On

---

[6] Nor does the CIA's reference the availability of other, non-responsive SII articles have any particular relevance to this issue. <u>See</u> Exhibit "2".

more than one occasion courts have clarified that evaluation of a fee waiver request should not rise or fall on whether the documents will ultimately be released.

> The DOJ's contention that this Circuit has held that a request for a fee waiver should be judged on the basis of the records actually disclosed, and not merely on the basis of what was requested, creates a rule never before articulated and ignores the previously cited case law standing for the opposite proposition.

Citizens for Responsibility & Ethics v. Dep't of Justice, 602 F. Supp.2d 121, 126 (D.D.C. 2009)(internal quotations omitted). See also Project on Military Procurement v. Dep't of Navy, 710 F. Supp. 362, 367-68 (D.D.C. 1989)("Defendant cannot be permitted to deny a fee waiver because, in theory, defendant has the ability to raise certain exemptions."); Eudey, 478 F. Supp. at 1177 ("In addition, knowledge of the quantity of responsive documents in agency files alone, or of the absence of such documents, may itself benefit the public by shedding light on the subject of Plaintiff's research.").

There is, of course, a possible exception to this rule in the case of records that are "patently exempt" on their face. See Citizens for Responsibility & Ethics, 602 F. Supp.2d at 125. But CIA has not claimed any type of patent exemption. All it has simply stated is that it anticipates the remaining records will be withheld under FOIA Exemption (b)(1). This exception to the rule is, therefore, not an issue in this proceeding.

Based on the entirety of the evidence before this Court that there are no material facts in dispute as to whether Scudder has sufficiently satisfied the criteria set forth by the D.C. Circuit and he should respectfully be granted a full fee waiver or, at a minimum, a reasonable reduction of the assessed costs.

### III. SHOULD CIA BE REQUIRED TO PRODUCE ELECTRONIC RECORDS IT SHOULD NOT BE PERMITTED TO CHARGE THE SAME FEES AS IF IT WAS PRODUCING PAPER COPIES

The CIA has informed Scudder that "[t]o the extent that the Agency is required by the court in the course of this litigation to make these records available electronically, due to the nature of the duplication process, the above fees would still apply and additional costs for the CDs would be assessed." Exhibit "3". As with its assertion that it cannot produce electronic records the notion that Scudder would be assessed copying fees for electronic production as if he received paper copies is disingenuous and, to be quite frank, is nothing more than the usual tactic of CIA to intimidate requesters not to further pursue their request.

Under the FOIA, "duplication" charges represent the reasonable "direct costs" of making copies of documents. 5 U.S.C. § 552(a)(4)(A)(iv); see OMB Fee Guidelines, 52 Fed. Reg. at 10,018. For non-paper copies, such as printouts, disks, or other electronic media, agencies should charge the actual costs of production of that medium. Id. When electronic copies are requested, "agencies should consult with their technical support staff for assistance in determining their actual costs associated with producing the copies in the various media sought." Id. at 10,017-18 (advising agencies to "charge the actual cost, including computer operator time, of production of [a computer] tape or printout").

At no time has CIA ever documented its "actual costs", and it certainly has not justified why an electronically produced document should be assessed fees at the same level as a photocopy. That aside, CIA's own regulation and the facts of this case further demonstrate the inappropriateness of the Agency's position.

First, nowhere within the Agency's own governing FOIA regulations does it support the asserted position. Its own schedule of fees, which can be found at 32 C.F.R. § 1900.13 (g), set forth categories of "Computer Search and Production" and "Paper Production". Exhibit "6". There is <u>no</u> delineated cost for electronic production of documents other than a reasonable assessed insignificant fee for the CD only. <u>Id</u>. Even though it appears obvious that the listed schedule of fees would be applicable to electronic production, even if it is deemed that such production falls within "other services" pursuant to (g)(3)(which specifies "photographs, maps, or published reports", none of which are at issue in this case) then CIA would need to determine "actual cost". <u>Id</u>. That includes "the commercial cost of the equipment, the personnel time expended in making the item to be released, and an allocated cost of the equipment used in making the item." <u>Id</u>. But when all is said and done, that cost should be $0.00.

There will be little to no "actual cost" associated with CIA's electronic reproduction of the SII articles. Every single responsive document has already been scanned in to CIA's computer systems. Scudder Decl. at ¶¶16-17. And while it is possible some of the articles may need to undergo further classification review and possible redactions, Scudder is personally aware of the fact that "the 133 articles that are the subject of Request F-2011-00448 have been scanned into CADRE. Additionally, not only have they passed their first and second classification reviews but they were ready for public release until certain CIA officials/offices placed the release in a holding pattern that has continued now for over a decade." <u>Id</u>. at ¶17.

Respectfully, this Court should not permit CIA to nullify the intent of Congress when it came to producing electronic records. The process was supposed to become

easier and cheaper, not more frustrating and expensive. Should CIA be required, as it should, to produce electronic records it should not be permitted to assess any duplication fees or at a minimum it has to justify "actual costs".

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment should be granted and all reproduction fees should be waived. Additionally, should electronic production be granted by this Court CIA should not be permitted to assess any reproduction fees.

Date: September 4, 2013

Respectfully submitted,

/s/

_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEFFREY SCUDDER                              *
                                             *
      Plaintiff,                        *
                                             *
      v.                                *          Civil Action No. 12-807 (BAH)
                                             *
CENTRAL INTELLIGENCE AGENCY,                 *
                                             *
      Defendant                         *
*     *     *     *     *     *     *     *     *     *     *     *

**PLATINTIFF'S STATEMENT OF MATERIAL FACTS**
**ABOUT WHICH THERE IS NO GENUINE ISSUE[1]**

Pursuant to Local Rule 7.1 (h), plaintiff Jeffrey Scudder ("Scudder") respectfully

submits the following Statement of Material Facts as to Which There is No Genuine

Issue.

    1. Scudder submitted three Freedom of Information Act ("FOIA") requests to the

defendant CIA in December 2010. The requests were respectfully for:

      (a) Electronic copies of 133 Studies in Intelligence (SII) articles
      listed in the accompanying pages. This request was assigned
      reference number F-2011-00448 by the CIA.

      (b) Electronic copies of 282 Studies in Intelligence (SII) articles
      listed in the accompanying pages. This request was assigned
      reference number F-2011-00449 by the CIA.

      (c) Electronic copies of 1,572 Studies in Intelligence (SII) articles
      listed in the accompanying pages. This request was assigned
      reference number F-2011-00450 by the CIA.

---

[1] This Statement was submitted for prepublication review to CIA pursuant to the terms of
the undersigned's secrecy/non-disclosure agreement. It was drafted with the intent to be
completely free of classified information. Nevertheless, should any information be
redacted by the CIA as classified the full version should be reviewed by this Court,
including requiring the CIA to substantively defend the classification determinations.

Declaration of Jeffrey Scudder at ¶2 (dated September 4, 2013)("Scudder Decl."), attached at Exhibit "4" to Plaintiff's Motion for Partial Summary Judgment Regarding the Defendant's Fee Waiver Denial and Electronic Record Production Costs (dated September 4, 2013)("Pl.'s SJ Memo").

3. Scudder specifically requested production of all responsive records in electronic format. Id. at ¶3.

4. Scudder has made arrangements for the dissemination of any released SII articles that are obtained through his FOIA requests and this litigation. Specifically, George Mason University and The James Madison Project are two entities that have agreed to accept and disseminate the records. Id. at ¶5.

5. Scudder has been communicating with Sharon M. Leon, Ph.D., Director of Public Projects and Associate Professor, Roy Rosenzweig Center for History and New Media, George Mason University, and was offered an opportunity to help build a preliminary site to load any documents that are released and then he will work with the University to maximize exposure. Id. at ¶6.

6. Mark S. Zaid, Esq. is the Executive Director of JMP, and has been since the organization was created in 1998. JMP is a Washington, D.C. organization that was established to promote government accountability and the reduction of secrecy, as well as to educate the public on issues relating to intelligence and national security through means of research, advocacy and the dissemination of information. It has a particular focus on better developing the laws and policies surrounding the FOIA and Privacy Acts, and fostering greater openness in our society without unnecessarily infringing upon any individual's right to privacy. JMP's website can be found at *www.JamesMadisonProject.org*. Declaration of Mark S. Zaid, Esq. at ¶4 (September 4, 2013), attached at Exhibit "5" to Pl.'s Partial SJ Memo.

7. JMP has agreed to post any and all SII articles that Scudder obtains the release of through his FOIA requests and his litigation on its website. The organization shall also be

issuing press releases regarding any of the substantive SII disclosures, and has extensive

connections to the media representatives who cover national security, as well as legal,

matters. Id. at ¶5; Scudder Decl. at ¶7.

8. CIA has no organized way of releasing SII articles to the public. Request F-2011-

00448 was for 133 SII articles that were approved for release almost a decade ago but

have been kept in limbo for some unknown reason. Id. at ¶8.

9. Although CIA stated in its letter dated May 24, 2013, that 1,627 articles are

"currently publically available", this is simply not true. Indeed, it contradicts the lists on

their own website and the SII articles are not available to the public online. Id. at ¶11.

10. Most, if not all, of the SII articles that CIA has online were scanned over a decade

ago and many are totally illegible or of such poor quality as to render them virtually

unavailable to the public.  Id. at ¶12.

11. SII is a 50-year old professional journal produced internally by the CIA's Center

for the Study of Intelligence ("CSI"), of which Scudder was a previously a member of its

staff. Indeed, on its own webpage, CSI describes the critical importance attributed by the

CIA to the SII articles in general:

> Intelligence trailblazer Sherman Kent—the 'father' of intelligence analysis
> in America—created [SII] in 1955 as a journal for intelligence
> professionals. In the first article published in [SII], Kent called for the
> creation of a literature that would support the development of intelligence
> as a professional discipline. He said, "As long as this discipline lacks a
> literature, its method, its vocabulary, its body of doctrine, and even its
> fundamental theory run the risk of never reaching full maturity." *Kent
> believed that the most important service such a literature could perform
> would be to record and disseminate new ideas and experiences, and build
> toward a cumulative understanding of the profession.*

Id. at ¶13; Exhibit "1".

12. SII is the type of document that provides historians a window into original source

materials of the Intelligence community. Disclosure of these articles would contribute

significantly to the public's understanding of government operations or activities. As a

general matter, SII articles provide insight into the analytical methods of CIA experts by

illustrating on what information they focus, how they analyze the information so selected,

and how their conclusions measure up to subsequent historical evidence. Similarly, many

such articles possess great historical value, a value recognized by the CIA

declassification efforts with respect to the entire archive of SII articles. That is why the

CIA itself published a select number of the articles on its website at

*https://www.cia.gov/library/center-for-the-study-of-intelligence/index.html*. . Id.; Scudder

Decl. at ¶14.

13. The CIA has asserted that should it be required to produce copies of any SII

articles in an electronic format it will still assess Scudder a duplication fee as if it were a

paper copy that was being reproduced. Id. at ¶15; Exhibit "3".

14. During the late 2000s, CSI scanned in every article of every issue of SII. These

are perfect, legible, and text searchable pdf files. The images are all stored on the high-

side network of CSI's office shared drives. Scudder created an Adobe script to take each

SII issue and break them out into separate files per article with the name of the article as

the pdf title. These files are sitting on the network drive of the Historic Collections

Division. Scudder Decl. at ¶16.

15. The 133 articles that are the subject of Request F-2011-00448 have been scanned

into CADRE. They have passed their first and second classification reviews and were

scheduled for public release but certain CIA officials/offices placed the release in a

holding pattern that has continued now for over a decade. Id. at ¶17.

Date: September 3, 2013

Respectfully submitted,

/s/
_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@markzaid.com

Attorney for Plaintiff