UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY SCUDDER, | |
| Plaintiff, | Civil Action No. 12-807 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| CENTRAL INTELLIGENCE AGENCY, | |
| Defendant. | |

**MEMORANDUM OPINION**

The plaintiff, Jeffrey Scudder, a former employee of the Central Intelligence Agency ("CIA"), challenges the CIA's response to three requests he made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking copies of certain articles from the CIA journal *Studies in Intelligence* ("SII").[1] *See* Compl. ¶ 5, ECF No. 1. Although the parties have previously filed, and this Court has ruled upon, four partial motions for summary judgment and a motion for discovery, the instant motion presents the first time "the ultimate issue of whether the documents requested by the plaintiff must be released under the FOIA." *See Scudder v. CIA* ("*Scudder I*"), 25 F. Supp. 3d 19, 22 (D.D.C. 2014) (denying partial motions for summary judgment and granting motion for discovery). The parties have since narrowed the issues in dispute and the only issue remaining is whether the CIA appropriately withheld certain articles, in part or in full, under FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1), (b)(3). Pending before the Court is the CIA's Motion for Summary Judgment on this issue. Def.'s 3d Mot. Summ. J. ("Def's 3d MSJ"), ECF No. 53.

---

[1] *Studies in Intelligence* is a "journal for intelligence professionals" that is "produced internally by the CIA's Center for the Study of Intelligence." Pl.'s Mot. Part. Summ. J. Regarding Def.'s Fee Waiver Denial ("Pl.'s Fee Waiver Mot."), Ex. 1 at 3 (April 30, 2013 Letter from Pl.'s Counsel to Def.), ECF No. 22-1.

1

I.   BACKGROUND

The facts of this matter are summarized in *Scudder I* and need not be repeated in detail here. *Scudder I*, 25 F. Supp. 3d at 22–27. Nevertheless, a brief discussion of the plaintiff and the FOIA requests at issue provide context for the instant motion.

The plaintiff is a computer programmer with over twenty-three years of experience in the intelligence community, "almost all of it handling information technology ('IT') issues." Pl.'s First Stmt. Undisputed Material Facts ("Pl.'s 1st SUMF") ¶ 1, ECF No. 9 (citing Decl. of Jeffrey Scudder (May 22, 2013) ("1st Scudder Decl.") ¶ 2, ECF No. 9-1). He formerly headed the CIA's Chief Information Officer's Architecture and System Engineering staff for the National Clandestine Service, "worked in Information Security for the Counter Intelligence Center, and was a senior IT project manager at both the Federal Bureau of Investigation and CIA." *Id.* He claims to have a "deep knowledge" of the "CIA's Automated Declassification and Release Environment ('CADRE') system," *id.*, which is what the CIA's FOIA office uses, *id.* ¶¶ 2, 3. During his tenure with the CIA, the plaintiff also worked for the Historic Collections Division ("HCD"), a division of the CIA's Information Management Systems, which, according to the plaintiff, "review[s] and manually redact[s] classified material for releases to the public." 1st Scudder Decl. ¶ 7. While with HCD, the plaintiff "came across three document projects" that he alleges "had been ready for release to the public for a decade but for some reason had never been released," specifically, a significant number of SII articles. *Id.* ¶ 8. The plaintiff avers that these document projects, totaling over 10,000 pages of records, were never released to the public due to an internal dispute between different departments of the CIA that prevented their release to the National Archives and Records Administration. *Id.* ¶¶ 8–9.

In December 2010, the plaintiff submitted three FOIA requests to the CIA, seeking electronic copies of nearly two thousand SII articles. *Id.* ¶ 4. By February 27, 2014, the plaintiff had narrowed his request to 419 SII articles. *See* Pl.'s Clarification Of His Not. of Part. Withdrawal of Parties' Cross-Summ. J. Mots. Pertaining to Def.'s Fee Waiver Denial at 1–2, ECF No. 39; Pl.'s Opp'n Def.'s 3d MSJ ("Pl.'s Opp'n") at 2, ECF No. 58. In *Scudder I*, prior to filing any dispositive motions on the merits, each party first sought summary judgment on the question of whether the CIA was required to produce the requested records in electronic format. *Scudder I*, 25 F. Supp. 3d at 26. This Court denied summary judgment to both sides in light of material factual disputes and the CIA's insufficient affidavits in support of its motion. *Id.* at 49 (describing Decl. Martha T. Lutz, Chief, Litigation Support Unit, CIA (Jul. 17, 2013) ("1st Lutz Decl"), ECF No. 14-3 and Supp. Decl. Martha T. Lutz, Chief, Litigation Support Unit, CIA (Nov. 7, 2013) ("2d Lutz Decl."), ECF No. 29-1). These factual disputes were based, in part, on the plaintiff's assertion of personal knowledge regarding whether the CIA was "technologically capable of providing the requested records in" electronic format and whether production in electronic format would be "unduly burdensome." *Id.* at 49; *see id.* at 43–49 (discussing the material factual disputes). The plaintiff's motion for discovery was granted to effectuate the resolution of these factual disputes. *Id.* The parties subsequently reached "a creative solution to the production of electronic records," such that the CIA agreed to "put[] PDF copies of the [non-exempt] requested records on its website." Joint Status Report at 2, ECF No. 47.

Later that year, in September 2014, the CIA produced 249 of the articles requested, in full or in part, and withheld 170 records in full on the basis of FOIA Exemptions 1, 3, and 6.[2] Def.'s

---

[2] This release of these SII articles became an issue in another case before this Court. In *Nat'l Sec. Counselors v. C.I.A. ("NSC II")*, 960 F. Supp. 2d 101 (D.D.C. 2013), and *Nat'l Sec. Counselors v. C.I.A. ("NSC III")*, 206 F. Supp. 3d 241 (D.D.C. 2016), this Court addressed a 2010 FOIA request by another FOIA requester for "all Tables of Contents" ("TOCs") from the SII that were not available on the CIA's website, *NSC II*, 960 F. Supp.

3d Stmt. Undisputed Material Facts (" Def.'s 3d SUMF") ¶ 4, ECF No. 53; Pl.'s Response Def.'s 3d SUMF ¶ 4, ECF No. 58-4 (undisputed). The CIA later determined that, "because [the plaintiff] requested the same records in multiple requests, it had actually withheld 167 documents in full." Def.'s 3d SUMF ¶ 6 at 2; Pl.'s Response Def.'s 3d SUMF ¶ 6 (undisputed).[3]

Remaining in dispute are 177 articles, which fall into two categories: (1) the 167 articles withheld in full, and (2) the partial withholdings from ten of the 249 released articles. Def.'s 3d SUMF ¶ 8 at 2; Pl.'s Response Def.'s 3d SUMF ¶ 8 (undisputed).[4] For those articles withheld in full, the CIA asserted that the withholding is justified under Exemption 1, which exempts from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order," 5 U.S.C. § 552(b)(1); Exemption 3, which exempts from disclosure records that are "specifically exempted from disclosure by [other] statute," *id.* § 552(b)(3); and Exemption 6, which exempts from disclosure records that pertain to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *id.* § 552(b)(6). For the ten challenged articles released in part, the CIA invoked only Exemptions 1 and 3. CIA *Vaughn* Index ("*Vaughn* Index") at 21–24, ECF No. 53-2.

---

2d at 168. In response to the FOIA request, the CIA located and produced TOCs from 148 issues of SII published over the last fifty years. *NSC III*, 206 F. Supp. 3d at 254. The CIA withheld certain material appearing in these TOCs, including a number of authors' names, article titles, and other information, all under FOIA's Exemption 1. *NSC II*, 960 F. Supp. 2d at 168. This Court concluded that the CIA had appropriately withheld information pursuant to Exemption 1 and granted the CIA summary judgment. *Id.* The *NSC* plaintiff sought reconsideration, contending, *inter alia*, that the CIA had released information in the instant case showing that a total of four TOCs were missing or incomplete from the CIA's production, *NSC III*, 206 F. Supp. 3d at 252, but this motion was denied, *id.* at 256–57.

[3] The paragraphs in the CIA's third statement of undisputed material facts are misnumbered beginning at paragraph six. For clarity, the correct paragraph number is provided along with the associated page number.

[4] The ten articles in which redactions are challenged are identified by entry numbers 168 through 177 on the CIA's *Vaughn* index, docketed at ECF No. 53-2.

The plaintiff has not moved for summary judgment. Instead, the plaintiff seeks denial of the CIA's motion and either discovery or an *in camera* review of a sample of the withheld documents by this Court. Pl.'s Opp'n. at 16–18. The CIA opposes any discovery or *in camera* review and rests on the declaration and *Vaughn* Index submitted with its summary judgment motion, Def.'s Reply Pl.'s Opp'n Def.'s Mot. ("Def.'s Reply") at 11–12, ECF No. 60, as well as a supplemental and amended *Vaughn* index, which were submitted *in camera* and *ex parte*. *See* Def.'s Notice of Lodging, ECF No. 62 (providing notice that the CIA had "complied with the Court's Minute Orders and ha[d] submitted its declaration and amended *Vaughn* Index *in camera, ex parte* and under seal") (hereinafter "4th Lutz Decl. (sealed)" and "amended *Vaughn* Index (sealed)").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc. ("Liberty Lobby")*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)). "[T]hese general standards under [R]ule 56 apply with equal force in the FOIA context," *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir.

1989), and the D.C. Circuit has observed that "'the vast majority of FOIA cases can be resolved on summary judgment,'" *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)). "However Congress was also aware that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *AquAlliance v. United States Bureau of Reclamation*, No. 15-5325, 2017 WL 1842507, at *1 (D.C. Cir. May 9, 2017) (quoting *Department of Justice v. Julian*, 486 U.S. 1, 8 (1988)). Accordingly, FOIA "balances the public's need for access to official information with the Government's need for confidentiality," *id.* (quoting *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 144 (1981) (alteration adopted)), through application of nine exemptions, which are "explicitly made exclusive and must be narrowly construed," *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016) (quoting *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011)); *see also Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys*, 844 F.3d 246, 249 (D.C. Cir. 2016); *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

"In a FOIA suit, the burden is 'on the agency to sustain its action,' and the district court must 'determine the matter *de novo*.'" *DiBacco*, 795 F.3d at 184 (quoting 5 U.S.C.

§ 552(a)(4)(B))*; see also Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979) (agency invoking exemption bears the burden "to establish that the requested information is exempt"); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989); *CREW*, 746 F.3d at 1088; *Elec. Frontier Found. v. U.S. Dep't of Justice ("EFF")*, 739 F.3d 1, 7 (D.C. Cir. 2014).

An agency may carry its burden of properly invoking an exemption by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which the requester's case may be presented to the trial court. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) ("In FOIA cases, "'[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)); *see also Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (instructing that agency affidavit "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection[,] . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision" (citation omitted)); *CREW*, 746 F.3d at 1088 (noting that agency's burden is sustained by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith") (quoting *Larson v Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). While "an agency's task is not herculean[,]" it must "'describe the justifications for nondisclosure with reasonably specific detail' and 'demonstrate that the information withheld logically falls within the claimed exemption.'" *Murphy*, 789 F.3d at 209 (quoting *Larson,* 565 F.3d at 862). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson,* 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## III. DISCUSSION

The only issue remaining in dispute is whether the CIA properly withheld 177 articles, in full or in part, under Exemptions 1 and 3.[5] The plaintiff makes three arguments in opposition to summary judgment: (1) the CIA's declaration and *Vaughn* Index that accompanied the agency's motion for summary judgment are insufficient to warrant summary judgment; (2) some of the SII articles the CIA claims to be classified are not, in fact, classified, and (3) the CIA has failed to show that all segregable portions of the responsive records have been released. *See* Pl.'s Opp'n 4–13. In evaluating these arguments, the Court considered all the declarations and *Vaughn* Indices filed by the CIA, including those filed *ex parte, in camera.*

### A. The Adequacy of the CIA's Declarations and *Vaughn* Indices

To justify the challenged withholding, the CIA primarily invokes FOIA Exemption 1, which protects from disclosure records that are: "(A) specifically authorized under criteria

---

[5] The plaintiff explains that he "is not seeking any 'names of certain individuals who work in [the] Intelligence Community agencies or have an unacknowledged association with the Agency" and is consequently not challenging any of the CIA's withholdings under Exemption 6. Pl.'s Opp'n at 4 n.3.

established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13526 ("E.O. 13526"), 75 Fed. Reg. 707 (Dec. 29, 2009), currently governs the classification and protection of national security information. Under Section 1.1 of E.O. 13526, "[i]information may be originally classified . . . if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." E.O. 13526 § 1.1(a).

The CIA's declarant argues that the challenged withholdings meet all four of these requirements under E.O. 13526. *See* Declaration of Martha M. Lutz, Chief of the Litigation Support Unit, CIA (Dec. 18, 2014) ("3d Lutz Decl.") ¶¶ 7–10, ECF No. 53-1. First, the CIA's declarant serves as an original classification authority ("OCA") and has determined that the information is classified. *Id.* ¶ 7. Second, the CIA's declarant states that the information at issue is owned by, produced by or for, or is under the control of the United States Government. *Id.* ¶ 8. Third, the declarant asserts that the withheld information falls under two of the categories listed in Section 1.4 of the Executive Order, which protects information relating to "intelligence activities (including covert action), intelligence sources or methods, or cryptology," E.O. 13526 § 1.4(c), and "foreign relations or foreign activities of the United States, including confidential

9

sources," *id.* § 1.4(d). 3d Lutz Decl. ¶ 9. Finally, the declarant argues it has provided sufficient information regarding the harm that would result if the information was disclosed. *Id.* ¶ 10.

The plaintiff argues that the CIA's *Vaughn* Index is "so vague and uninformative as to be useless and fails to meet the necessary standard for summary judgment." Pl.'s Opp'n at 4. In particular, the plaintiff observes that the CIA's initial *Vaughn* Index simply numbers the records, provides a title where unclassified, the date of the document (if dated), the number of pages, and the FOIA exemptions invoked. *Id.*; *see Vaughn* Index at 1–24. Conceding, however, that "[t]he significance of agency affidavits in a FOIA case cannot be underestimated," Pl.'s Opp'n at 4 (quoting *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)), the plaintiff recognizes that the *Vaughn* Index must be read alongside the agency's accompanying declaration, *id.* Nonetheless, the plaintiff asserts that the 3d Lutz Decl. "lacks any semblance of true specificity" and "relies upon vague and boilerplate explanations of FOIA Exemptions." *Id.* at 8.

The CIA's declarations and *Vaughn* Indices, particularly the 4th Lutz Decl. (sealed) and amended *Vaughn* Index (sealed), show that the withheld information meets the requirements of E.O. 13526. Not only does the declarant explain how the withheld information meets the procedural requirements of E.O. 13526, the declarations and *Vaughn* indices, taken together, adequately detail how each withheld document and redacted material includes information about intelligence sources and methods—including information about foreign liaisons and governments, cover, and field installations—as well as specific intelligence activities. *See* 3d Lutz Decl. ¶ 20. Further, as explained in the 3d Lutz Decl., release of this information could compromise the CIA's mission by revealing "the breadth, capabilities, and limitations of the U.S. Government's intelligence collection," *id.* ¶ 19, as well as the Government's "specific intelligence capabilities, interests, priorities, and resources," *id.* ¶ 26. Accordingly, the

declarations and *Vaughn* Indices "plausibly" justify the CIA's "assertion that [the] information [requested] is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

In short, "[g]ranting the CIA's affidavit substantial weight concerning the classified nature of the [documents] due to the risk that their release could pose to national security, the [declarations and *Vaughn* Indices] sufficiently demonstrate[], to the extent possible without revealing classified information, that the [articles] are properly classified under Executive Order [13526] in the interest of national security, and therefore fall within Exemption 1." *Larson*, 565 F.3d at 864. Further, "[t]he parties present [this Court] with no evidence to the contrary or evidence suggesting bad faith on the part of the CIA in withholding" the documents. *Id.* Accordingly, the CIA has met its burden to show that the information is appropriately withheld under Exemption 1.[6]

### B. Whether the Information Requested is Classified

The plaintiff alleges that, based on his personal knowledge, 133 of the SII articles subject to his FOIA requests "had already been approved prior to this litigation for release as unclassified." Pl.'s Opp'n at 11. According to the plaintiff, "[a]n Information Review and

---

[6] The CIA also invokes Exemption 3 for every piece of information being withheld. Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. Cent. Intelligence Agency,* 607 F.2d 339, 350 (D.C. Cir. 1978). Thus, the CIA "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson,* 565 F.3d at 868 (citing *Fitzgibbon v. Cent. Intelligence Agency,* 911 F.2d 755, 761–62 (D.C. Cir. 1990)). As Exemption 1 applies to all of the information withheld, however, the question of whether Exemption 3 also applies need not be reached. *See Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 207 n.2 (D.C. Cir. 2015) ("Because we hold that the EOUSA properly invoked exemption 3, we do not address whether it also properly invoked exemption 7(C)." (citing *Larson,* 565 F.3d at 862–63 (D.C. Cir. 2009) ("agencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability" of others)).

Release Group ('IRRG') reviewer had reviewed all 133 and all were marked for release." Decl. of Jeffrey Scudder (Mar. 13, 2015) ("2d Scudder Decl.") ¶ 14, ECF No. 58-1.

Effectively, the plaintiff is asking the Court to second-guess the CIA's classification determination. At the outset, "[b]ecause judges lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case, the court declines to do so here." *Edmonds v. U.S. Dep't of Justice*, 405 F. Supp. 2d 23, 33 (D.D.C. 2005). Moreover, the plaintiff does not have, or purport to have, original classification authority. Consequently, his personal opinions and recollections are insufficient to create a genuine issue of material fact with respect to whether the articles withheld are classified. *See, e.g.*, *Gardels v. CIA*, 689 F.2d 1100, 1106 n.5 (D.C. Cir. 1982) (affidavit of a former CIA employee giving views as to the lack of harm that would result due to disclosure was "insufficient to undermine the [CIA's] presentation"); *Shaffer v. Def. Intelligence Agency*, 102 F. Supp. 3d 1, 14 n.14 (D.D.C. 2015) ("Further, Col. Olivero does not have, or purport to have, authority to make classification determinations, and his personal opinion regarding whether information is or was classified is not controlling." (citing *Gardels*, 689 F.2d at 1106 n.5; *Halperin v. Nat'l Sec. Council*, 452 F. Supp. 47, 51 (D.D.C. 1978) ("nothing in the record justified 'the substitution of the Court's judgment or the informed judgment of the [p]laintiff for that of the officials constitutionally responsible for the conduct of United States foreign policy as to the proper classification of [the documents]'")). In this case, the CIA provided multiple declarations from an individual who holds original classification authority at the Top Secret level and is therefore "authorized to conduct classification reviews and to make original classification decisions." 3d Lutz. Decl ¶ 7. Lacking any record evidence of bad faith, the plaintiff's assertions to the contrary are not persuasive or controlling.

The plaintiff also raises a question about the "appropriateness of CIA's classification assertions," in part based on his allegation that although the CIA redacted an author's name from one of the articles it posted online, "it did not take too much effort to find elsewhere on CIA's own website that the individual's name is very openly unclassified." Pl.'s Opp'n at 11, 12. Regardless of whether an individual's name may be unclassified in connection with one document, that same name may be classified in connection with another document. The Supreme Court has recognized that "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims,* 471 U.S. 159, 178 (1985) (holding the CIA could withhold superficially innocuous information on the basis that it could enable discovery of the identity of an intelligence source). Context matters. "[T]he disclosure of an author's name in a particular context, or in connection with a particular article, does not necessarily permit the disclosure of this individual's name as it appears in other agency documents, since relevant information (*e.g.*, the author's position and title) may change over time." *NSC III*, 206 F. Supp. 3d at 255. Moreover, although certain pieces of withheld information alone may not be classified, when taken together with other "bits and pieces of seemingly innocuous information," a "mosaic" of information can form, which can reveal classified information that, if disclosed, could pose a threat to national security. *Halkin v. Helms,* 598 F.2d 1, 8 (D.C. Cir. 1978); *see Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice,* 331 F.3d 918 (D.C. Cir. 2003) (applying the mosaic theory in a FOIA case). Accordingly, the mere fact that an author's name is unclassified in one context does not imply that the same name is not classified in another context.

C.     **Segregability**

The FOIA requires agencies to produce "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt" from disclosure under the Act. 5 U.S.C.A. § 552(b). As part of a FOIA review, district courts have an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information, regardless of whether the FOIA plaintiff has raised this issue. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *see also Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff." (citations omitted)); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). Agencies are not, however, required to disclose portions of documents that would be otherwise non-exempt if those portions are "inextricably intertwined with exempt portions." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) (citing *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977).

In this case, the CIA's declarant has explained that she "conducted a page-by-page and line-by-line review of all of the articles at issue and released all reasonable segregable non-exempt information." 3d Lutz Decl. ¶ 30. Further, "[a]fter reviewing all of the records at issue,"

the CIA's declarant "determined that no additional information can be released without jeopardizing classified . . . information . . . ." *Id.* Based on review of the CIA's supplemental declaration and amended *Vaughn* Index, sufficient detail has been provided to the Court to support the declarant's statement.

The plaintiff speculates, based on his perusal of article titles, that withheld documents might cover "innocuous, historical or even silly topic[s]." Pl.'s Opp'n at 15. This bare speculation is insufficient to undermine the CIA's assertion that the information contained in the articles is classified. First, "[t]he fact that certain titles may appear to a lay person as 'generic' or 'banal' has no bearing on whether the information was properly classified." *NSC II*, 960 F. Supp. 2d at 170. As previously noted, not only is "the judiciary [] in an extremely poor position to second-guess the executive's judgment in th[e] area of national security," *Ctr. for Nat'l Sec. Studies,* 331 F.3d at 928, "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because, 'much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information, even when the individual piece is not of obvious importance in itself,'" *Larson,* 565 F.3d at 864 (quoting *Gardels v. CIA,* 689 F.2d 1100, 1106 (D.C. Cir. 1982)).

Second, the information provided in the supplemental declaration and amended *Vaughn* Index belies any notion that the information contained in these articles is "innocuous" or "even silly." Rather, the CIA has provided reasonably detailed descriptions about each of these articles that show that the articles contain material that cannot be released without jeopardizing sensitive and classified information.

Finally, "[w]hile agency affidavits must be reasonably detailed, non-conclusory and submitted in good faith, they are also 'accorded a presumption of good faith,' forcing a FOIA

plaintiff to rebut agency affidavits with something more than pure speculation." *Nance v. F.B.I.*, 845 F. Supp. 2d 197, 203 (D.D.C. 2012) (quoting *SafeCard Services, Inc. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C. Cir. 1991)). The plaintiff's speculation that the documents contain segregable information is plainly insufficient to rebut the presumption that the CIA's supplemental declaration and amended *Vaughn* Index were prepared and submitted in good faith.[7]

## IV. CONCLUSION

For the foregoing reasons, the CIA has adequately demonstrated that information withheld from disclosure in response to the plaintiff's FOIA requests is classified and subject to protection under Exemption 1. Accordingly, the CIA's motion for summary judgment is GRANTED.

Date: May 17, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[7] The plaintiff suggests that this Court should consider conducting *in camera* review of a "small random sampling of the articles," Pl.'s Opp'n at 16, a process explicitly sanctioned in the FOIA, *see* 5 U.S.C. § 552(a)(4)(B) (providing that a district court "may examine the contents of . . . agency records in camera . . . ."). "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Am. Civil Liberties Union v. U.S. Dep't of Defense,* 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks omitted). When an agency meets its burden through affidavits, "*in camera* review is neither necessary nor appropriate," and "*[i]n camera* inspection is particularly a last resort in national security situations like this case." *Larson,* 565 F.3d at 870 (internal quotation marks omitted). Since the declarations submitted by the CIA are sufficient to uphold the CIA's withholding decisions, "the Court need not review the documents themselves *in camera,* as [the plaintiff] suggests." *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 68 (D.D.C. 2013), *aff'd,* 806 F.3d 568 (D.C. Cir. 2015).